IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| CHAD ERIC BJORK,<br><br>Plaintiff,<br><br>vs.<br><br>CHRISTINE SLAUGHTER (CHO/DHI), TOM BOLTON (MSP TRAINING), SAM JOVANOVICH (A UNIT MANAGER), PAUL REES, KRISTINE COBBAN, HAROLD STREY, and RANDALL JONES (SERGEANT),<br><br>Defendants. | CV 18–107–H–DLC–JTJ<br><br>ORDER |

On February 9, 2021, United States Magistrate Judge John Johnston entered his Order and Findings and Recommendations ("F&R"). (Doc. 94.) In the F&R, Judge Johnston ruled on a number of discovery disputes. (Doc. 100). The Court will review for clear error those matters to which Plaintiff Chad Eric Bjork objects, 28 U.S.C. § 636(b)(1)(A), mindful of the deferential review accorded to rulings on discovery matters, *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988) (noting a trial court's "wide discretion in controlling discovery"); *e.g.*, *United States v. Montrose Chem. Corp. of Calif.*, 50 F.3d 741, 746 (9th Cir. 1995) (noting the doubly deferential review). Judge Johnston's F&R also recommended the Court grant in part and deny in part Defendants' pending motion for summary

judgment. Bjork objects to certain aspects of the F&R and so the Court will review de novo those findings and recommendations to which he specifically objects and all other portions for clear error. 28 U.S.C. § 636(b)(1)(C); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003); *Thomas v. Arn*, 474 U.S. 140, 149 (1985). Clear error exists if the Court is left with a "definite and firm conviction that a mistake has been committed." *United States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000) (citations omitted).

The Court will first address the portion of the F&R on summary judgment before turning its attention to the other matters.

## BACKGROUND[1]

At the core of Bjork's Complaint are two incidents that he claims amount to unconstitutional harms. The first involves an altercation with Officer Randal Jones. Bjork claims Jones confiscated his sunglasses which he asserts were authorized and medically necessary to prevent his light-induced migraine headaches. In the ensuing confrontation over the sunglasses, Bjork claims Jones poked him in the chest. Bjork told Jones he was going to grieve the incident and Jones wrote Bjork up for lying about whether his sunglasses were authorized.

[1] As Judge Johnston notes, the facts of this case have not been well presented to the Court. (Doc. 94 at 11-12.) The Court has looked to the F&R (Doc. 94), Defendants' Statement of Undisputed Facts (Doc. 82), Bjork's Amended Complaint (Doc. 22) and Objections to the F&R (Doc. 100) to piece together its understanding of the factual basis for Bjork's claims.

Bjork alleges this write up constitutes retaliation in violation of his First Amendment grievance rights. Bjork then claims that supervising Officer Sam Jovanovich fabricated a story that Bjork was in another inmate's cell in violation of prison policy and wrote him up for that violation. Bjork claims this write up amounts to retaliation for Bjork's grievance about Jones.

In the second incident, Bjork claims that Officer Tom Bolton conducted a strip search of him outside of the mess hall in view of numerous others. Bjork claims the search resulted in a sexual assault that caused him rectal bleeding for which he was denied adequate medical care. Bjork filed a Prison Rape Elimination Act ("PREA") complaint against Bolton, which caused numerous other prison officials to retaliate against him in defense of Bolton.

Judge Johnston recommended the claims against Bolton and Jovanovich go forward and recommended the Court grant summary judgment to Defendants on all other counts. The Court adopts in part and rejects in part the Magistrate's recommendations, and will address each recommendation in the order it was discussed in the F&R. The Court will not restate the legal standards which are correctly articulated in the F&R nor will it expound upon the facts except as necessary to understand its order.

## I. Defendant Jones

Bjork claims that Defendant Jones confiscated his sunglasses on the belief they were unauthorized, poked Bjork in the chest, and then sent him out into the sunlight which caused him a migraine headache. When Bjork told Jones that he intended to grieve the incident, Jones wrote Bjork up for lying to him about whether his glasses were authorized. Bjork claims that at the time of the incident, he believed the glasses were authorized because he had been wearing them for days and no one had objected to his having them except Jones. (Doc. 87-2 at 30.) Bjork now acknowledges that to the extent he fudged the truth, it was only because Jones confronted him in the midst of a full-blown migraine and he was confused about the encounter. (*Id.*)

Judge Johnston first addressed Bjork's claim that Jones' poke and other acts constitutes excessive force. Judge Johnston recommended the Court grant Jones summary judgment on this claim finding that a poke, "while . . . disrespectful, unnecessary, or even reproachable, . . . is not an excessive amount of force in violation of the [Eighth] Amendment" under *Hudson v. McMillian*, 503 U.S. 1 (1992). (Doc. 94 at 14.) In his objections, Bjork clarifies that Jones did more than merely poke him: he also yelled and sent Bjork into the sun knowing that Bjork was sensitive to light. Bjork emphasizes that there simply no penological need for these acts. (Doc. 100 at 13.)

The Court agrees with Judge Johnston that Bjork's excessive force claim fails because the force alleged by Bjork does not rise to the level of a constitutionally protected harm under the Eighth Amendment. Bjork's clarification about the amount of force used by Jones does not change that conclusion.

Judge Johnston next addressed Bjork's retaliation claim. A First Amendment retaliation claim in the prison context requires an inmate to "(1) . . . assert[] that a state actor took some adverse action against [that] inmate (2) because of (3) that [inmate's] protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). Judge Johnston recommended the Court grant summary judgment to Jones because Bjork himself acknowledges that he lied about the glasses (although he provides an excuse for doing so). Judge Johnson reasoned that regardless of Bjork's justification, his acknowledged lie provided a legitimate penological reason for Jones to write him up. (Doc. 94 at 17.)

In his objections, Bjork insists that Defendants have not pointed to any policy or submitted any proof that his sunglasses were unauthorized. (Doc. 100 at 16.) This contention misses the point. There is no dispute that, at the time Jones confiscated his glasses, Bjork had not received explicit permission to have them.

There is also no dispute that Bjork told Jones that the glasses *were* authorized, which, at best, overstates what Bjork himself understood to be their permitted status. Although Bjork would now like to argue that he *could* have received authorization for the glasses as medically necessary, his retaliation claim does not rise or fall on what might have been. Judge Johnston's recommendation to dismiss Bjork's retaliation claim against Jones is adopted for the reasons advanced in the F&R.

## II. Defendant Bolton

Judge Johnston recommended Bjork's claims against Bolton advance. Bjork does not object. The Court finds no clear error and adopts the recommendation.

## III. Defendant Jovanovich

Bjork alleges that Jovanovich is vicariously liable for Jones' bad behavior because Jovanovich is Jones' supervisor. He also alleges that Jovanovich retaliated against him by writing him up for being in another inmate's cell (an allegation Bjork disputes) and for lying about him at the related disciplinary hearing. (Doc. 94 at 24–25.)

Judge Johnston recommended Bjork's claims against Jovanovich for actions taken in Jovanovich's own right advance but recommended the Court dismiss Bjork's allegations that, as a supervisor, Jovanovich is responsible for Jones's bad

behavior. Bjork does not object and the Court finds no clear error in this recommendation, which is adopted.

**IV. Defendant Slaughter**

Bjork claims Officer Christine Slaughter retaliated against him after he requested an ADA accommodation during a disciplinary hearing before her. This is the same disciplinary hearing discussed above, concerning Jovanovich's allegation that Bjork was found in another's inmate's cell in violation of prison policy. Bjork claims that Slaughter's conclusion that he was guilty of some of the infractions contained in Jovanovich's report was in retaliation for Bjork's PREA complaint against Bolton. (Doc. 94 at 26–27.)

Judge Johnston recommended that Slaughter be granted summary judgment because the record reveals that Bjork was not entitled to an ADA accommodation until September 2019, making Slaughter's denial of Bjork's November-2018 accommodation request valid. Judge Johnston also determined that Bjork had not shown a nexus between Bjork's ADA request and Slaughter's adjudication at the hearing—which found Bjork not guilty of one aspect of Jovanovich's report but found for Bjork on other allegations. (*Id.*)

Bjork does not specifically object to these findings and instead claims that Slaughter "intentionally failed to respond appropriately" and did not follow "MSP/DOC disciplinary hearing policy and procedures." He also claims that

Slaughter's actions delayed his access to medical care. (Doc. 100 at 12–13.) These assertions do not inform the Court which of the Magistrate's findings Bjork believes is erroneous, and so the Court reviews for clear error and finds none. The Court adopts the F&R's recommendation on this score.

**V. Defendant Strey**

Bjork also alleges a retaliation claim against Officer Harold Strey. Strey was assigned to investigate Bjork's PREA complaint against Bolton and did so pursuant to prison policy. He interviewed numerous witnesses to the search, after which he concluded that no assault occurred. Upon so concluding, Strey elected to discipline Bjork for lying about Bolton—which is permitted but not required under the prison's PREA policy. (Doc. 94 at 27–31.)

Judge Johnston first noted that the retaliation claim against Strey and the Fourth Amendment claim against Bolton each contain the same factual core—the strip search/assault—however, he noted that these claims involve different legal standards. Although he recognized that there remains a material factual dispute as to whether the strip search was reasonable under the Fourth Amendment, Judge Johnston determined that it was reasonable for Strey to conclude that no assault occurred because Bjork has never alleged that the search involved any physical contact from Bolton. Because Strey's conclusion was reasonable in the Magistrate's view, Strey's decision to punish Bjork for lying "reasonably

advanced[d] a legitimate correctional goal," *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005), thus defeating a claim of retaliation in the prison context. (*See id.*)

Mindful of the difference between Bjork's Fourth Amendment claim and his First Amendment claim, the Court cannot conclude that the underlying factual dispute when viewed in the light most favorable to Bjork entitles Strey to summary judgment. Although Judge Johnston is correct that Bjork has never alleged that Bolton touched him, the Court does not read MSP's definition of sexual abuse to require physical contact. The policy defines sexual abuse as:

> Sexual acts, sexual contact or any other intentional contact, either directly, through the clothing or with an object, of or with the genitalia, anus, groin, breast, inner thigh, or the buttocks, any attempt, threat, or request by an employee or service provider to engage in these activities, any display by an employee or service provider of his or her uncovered genitalia, buttocks, or breast in the presence of an offender, or voyeurism by an employee or service provider, when these acts are unrelated to official duties or where the employee or service provider has the intent to abuse, arouse, or gratify sexual desire.

MSP OP 1.1.17(II).

From the beginning, Bjork has alleged that Bolton insisted he remove his underwear, bend over, and hold his buttocks open for Bolton's visual inspection. But according to Bjork's allegations, when he complied with this instruction, it wasn't good enough for Bolton. Bolton directed Bjork to hold his buttocks open wider and then wider still, until, at last, Bjork felt his rectum tear along the site of

an old injury. This claim is supported by Bjork's medical exam which determined that following the assault, Bjork experienced "some anal bleeding from [a] pre-existing anal fisher [sic]." (*See* Doc. 79 at 2.)

A reasonable jury could conclude under MSP's definition, that Bolton's search constitutes a "sexual act[] . . . of the anus" or "voyeurism by an employee . . . unrelated to official duties or where the employee has the intent to abuse, arouse, or gratify sexual desire." Given the expansive nature of the definition, the Court cannot conclude as a matter of law that the lack of touching means that Bolton did not sexually assault Bjork. A factual dispute on this point necessarily means there is a factual dispute as to whether Strey's conclusion that no assault occurred was a reasonable interpretation of the evidence or whether it was a conclusion informed by bias and intent to retaliate. Thus, there is a question as to whether his decision to punish Bjork for lying "reasonably advance[d] a legitimate correctional goal" or whether it was retaliatory. Bjork's claim against Strey survives summary judgment.

**VI. Defendant Cobban**

Judge Johnston recommended the Court grant Officer Kristine Cobban summary judgment on Bjork's retaliation claim because Cobban's role in the PREA investigation was limited to responding to his greivances which generally consist of updating him on the decisions made by others. Bjork does not

specifically object to this finding other than to assert that Cobban is guilty of conspiring with others. (Doc. 100 at 4–5, 10, 12–13.) Although Cobban's responses to Bjork's grievances are extraordinarily difficult to read given the combination of quickly scribbled handwriting, faded ink, and poor copy quality (Doc. 87-2 at 84, 85, 87, 89), from the little the Court can glean, Judge Johnston appears to be correct on the substance of Cobban's contributions. If there was any error on this score, it was Bjork's responsibility to bring it to the Court's attention. Having failed to do so, the Court finds no clear error in Judge Johnston's recommendation and will grant summary judgment to Cobban.

## VII. Defendant Rees

Bjork alleges that the prison's medical director, Dr. Paul Rees, was deliberately indifferent to his medical needs in violation of the Eighth Amendment when, following the strip search, Bjork experienced months of rectal bleeding for which he was never seen or treated by a physician despite his repeated requests for medical attention.[2] Judge Johnston recommended Dr. Rees be granted summary judgment on this claim upon concluding that Dr. Rees never personally treated

[2] In his objections, Bjork acknowledges that he was eventually seen by a physician, months after the incident and months after his repeated requests for treatment. (Doc. 100 at 10.) Because Defendants do not defend the acts of Dr. Rees or the medical care Bjork received months down the road as a reasonable response to Bjork's situation—and because neither party submits proof of this visit—the Court will set aside the fact that Bjork was eventually seen in its analysis of this issue. Whether this visit constitutes a reasonable medical response to Bjork's condition is a question for the jury.

Bjork and because Bjork failed to establish that his care was lacking by expert testimony. (Doc. 94 at 34.) The Court disagrees with the recommendation and will allow this claim to advance.

Bjork was seen by a nurse at the Prison's medical facility on October 31, 2018, immediately after the search incident with Bolton. The nurse's report indicates that Bjork was bleeding from his rectum and experiencing high blood pressure at the time. Importantly, the nurse noted that Bjork would need to be seen "ASAP" by "Dr. Thomas tomorrow." (Doc. 79 at 1.) Apparently, Bjork was never seen by Dr. Thomas or any other doctor.

On November 21, 2019, Bjork sent a kite indicating that he was still experiencing rectal bleeding from the strip search and wanted to be seen by a doctor. (*Id.* at 6.) In response, Bjork was told that he would be scheduled for an appointment with his provider within ten days. (*Id.* at 5–6.) But still, Bjork was not seen. (*Id.* at 13.)

On December 4, 2018, Bjork sent a kite stating that he erroneously received notice that he had failed to show up for an appointment with his provider. (*Id.*) Bjork wrote, "I did not refuse any medical treatment; in fact, I have been kiting and kiting to be seen for the rectal bleeding," to no avail. In response to this kite, Bjork was informed that he would be rescheduled for an appointment with a doctor. Once again, though, it appears no appointment occurred.

In the following weeks and months, Bjork sent kite after kite requesting flushable wipes to help him manage his bleeding. Although he was initially denied wipes and told to address the matter with his doctor at his next scheduled appointment, eventually, it appears he was given some wipes. (*See id.*)

An Eighth Amendment claim based on inadequate medical care requires a plaintiff to show: (1) that subjectively, the defendant was deliberately indifferent to the plaintiff's medical needs; and (2) objectively, the medical need was serious. *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017); *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). A prison official acts with deliberate indifferent to an inmate's "serious medical needs by intentionally denying or delaying access to medical care or interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976).

Judge Johnston recommended the Court grant Dr. Rees summary judgment because (1) Dr. Rees never treated Bjork; (2) Bjork did not "establish[] by expert or otherwise that his treatment was lacking"; and (3) the documents in the record do not establish that Dr. Rees directly conspired with others to deny Bjork treatment. (Doc. 94 at 34.) Although this reasoning accords with courts that have found the plaintiff's evidence lacking on summary judgment in a typical Eighth Amendment medical needs case where an inmate receives some care but claims it was not adequate, this reasoning makes little sense here where the evidence

suggests that Bjork was never seen by *any* doctor. *See Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (distinguishing between cases where a plaintiff alleges a complete denial of medical care and cases where a plaintiff alleges inadequate medical care).

Put simply, if a doctor's failure to treat were a viable defense to a failure-to-treat claim, no plaintiff would ever be able to establish an Eighth Amendment violation for a denial of medical services. *See Tolbert v. Eyman*, 434 F.2d 625, 626 (9th Cir. 1970) (recognizing that the "failure or refusal to provide medical care, or treatment so cursory as to amount to no treatment at all, may, in the case of serious medical problems, violate" the constitution). This is not to say that Bjork may hold each and every doctor at MSP liable for failing to treat him. When no doctor provides an inmate with medical care, it makes sense that each subordinate is let off the hook, as each may point at another and say, "it wasn't my job." But where an inmate's care is deliberately ignored by all, who is responsible if not the person in charge?

Judge Johnston erred in construing Bjork's claim as one of supervisory liability. Where a claim of deliberate indifference to medical care is premised upon facts that an inmate's care was ignored by an entire medical department, this failure becomes a professional failure personal to the director himself. In such a case, the actual knowledge prong of a deliberate indifference claim may be proven

because the risk to the inmate is obvious when a medical need is serious and all treatment is denied. *Farmer v. Brennan,* 511 U.S. 825, 842 (1994) (finding that where a risk is obvious, a jury may conclude that the defendant was actually aware of it).

Moreover, Bjork does not need to produce expert testimony to establish his treatment was insufficient because, once again, he never received any treatment. *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017) (recognizing that expert testimony is only necessary where an inmate receives some medical treatment). The evidence reflects that the nursing staff at MSP believed his injuries were sufficiently serious such that he needed to be seen by a doctor. The evidence also suggests that Bjork was never seen by any doctor. Instead, weeks later, he was given some flushable wipes when his rectal bleeding still had not resolved. Bjork's claim against Dr. Rees survives summary judgment.

**VIII. Preliminary Injunction**

Judge Johnston recommended denying as moot Bjork's motion for a preliminary injunction based on prison officials having confiscated his typewriter because Bjork is no longer incarcerated. Bjork argues that he may be incarcerated in the future (Doc. 100 at 13), but his speculation about a future injury does not keep his concerns over his typewriter alive. Judge Johnston's recommendation is adopted for the reasons advanced in the F&R.

## IX. Discovery Rulings

Judge Johnston's Order, Findings and Recommendation ruled on a number of non-dispositive pretrial matters. The Court will only address those recommendations and rulings to which Bjork raises objection.

### A. Motion for sanctions

Judge Johnston recommended denying Bjork's motion for sanctions based on Defendant's minimally late discovery responses. Although the Court does not condone tardy responses, the Court adopts the recommendation to deny Bjork's motion for sanctions where his delay in receiving Defendants' discovery amounts to a handful of days and where the delay caused no prejudice.

### B. Motions to compel

Judge Johnston construed two of Bjork's filings as motions to compel. The Court will review for clear error those rulings to which Bjork objects.

#### i. Video

Bjork requested to view all video footage of the strip search. Defendants allowed him to view video footage taken from one angle but withheld footage from another angle claiming it implicated security concerns. Judge Johnston required Defendants to produce the video for in camera inspection. Having reviewed the

footage, the Court finds that both angles are necessary for Bjork's claim.[3] Defendants must allow Bjork access to all video evidence of the strip search.

**ii. Strip Search Log & Special Needs Committee Transcript**

Judge Johnston declined to compel Defendants to produce a strip search log or a transcript of the special needs committee meetings, accepting as true counsel's assertion that no such evidence exists. In his objections, Bjork argues that the absence of these records tends to indicate that the various prison officials implicated were up to no good. (Doc. 100 at 9.) Bjork may argue this at trial. Nevertheless, there being no records to compel, there is no clear error in Judge Johnston's ruling.

IT IS ORDERED that the Order, Findings and Recommendations is ADOPTED in part and REJECTED in part.

1. Defendants' motion for summary judgment (Doc. 80) is DENIED as to Defendants Bolton, Jovanovich, Strey, and Rees.
2. Defendants' motion for summary judgment (Doc. 80) is GRANTED as to Defendants Slaughter, Cobban, and Jones.

IT IS FURTHER ORDERED that:

[3] Defendants assert that they have filed the video footage under seal (Doc. 101 at 7–8), which, if true, would have given Bjork access to the footage. But this is not the case. The footage was filed for the Court's *in camera* inspection (Doc. 96) which does not provide Bjork access to them. If Defendants have not already provided Bjork access to the videos, they must do so now.

1. Plaintiff's Motion for Emergency Prohibitory Injunction (Doc. 77) is DENIED.
2. Plaintiff's motion for sanctions and default judgment and/or contempt (Doc. 70) is DENIED.
3. Judge Johnston's rulings on all other matters (Docs. 78, 75, 76, and 89) remain undisturbed.

DATED this 10th day of June, 2021.

Dana L. Christensen, District Judge
United States District Court